**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey C. Stone, Inc., d/b/a Summit Builders,<br><br>    Plaintiff,<br><br>vs.<br><br>MidFirst Bank, et al.,<br><br>    Defendants. | No. CV-09-01218-PHX-ROS<br><br>**ORDER** |

Defendant MidFirst Bank seeks dismissal of one count in Plaintiff's second amended complaint. For the following reasons, the motion will be denied.

**BACKGROUND**

Summit is a general contractor that entered into a contract with ICP D200, LLC ("ICP") to construct a condominium project. ICP financed the project with a construction loan from MidFirst. Summit is still owed approximately $1.4 million for its work on the project. Count one of Summit's second amended complaint alleges MidFirst negligently failed to disclose the fact that ICP had defaulted on the construction loan. MidFirst argues the amended complaint was not filed by the deadline and should be stricken. MidFirst also seeks dismissal of the failure to disclose cause of action on the basis that MidFirst did not have a duty to disclose to Summit the financial condition of ICP.

**ANALYSIS**

**I. Timeliness of Amended Complaint**

The Court ordered Summit to file its amended complaint "no later than January 18, 2010." Because January 18, 2010 was a federal holiday, Summit did not file its amended complaint until approximately 2 a.m. on January 19, 2010. MidFirst argues the amended complaint is untimely and must be stricken.

Federal Rule of Civil Procedure 6 provides for an extension of time when "the last day for filing" a document falls on a legal holiday. MidFirst is correct that this rule does not apply when a court provides a date certain. *Violette v. P.A. Days, Inc.*, 427 F.3d 1015, 1018-1019 (6th Cir. 2005). But it is well-established that district courts have "broad inherent powers to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Sherman v. United States*, 801 F.2d 1133, 1135 (9th Cir. 1986). Here, nothing would be gained by requiring Summit file a formal request that its second amended complaint be accepted. Instead, in an exercise of its discretion, the Court will deem Summit's filing timely and proceed to the merits. *See Bailey v. United Airlines*, 279 F.3d 194, 203 (3d Cir. 2002) (affirming district court's decision to accept filing one day after deadline when deadline fell on holiday).

**II. Standard for Motion to Dismiss**

"[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. While "legal conclusions can provide the framework of a complaint . . . they must be supported by factual allegations" sufficient for the court to conclude the plaintiff has stated a plausible claim. *Id.*

### III. Summit Has Adequately Pled a Negligent Failure to Disclose

Summit's first cause of action is that MidFirst negligently failed to disclose to Summit the financial condition of ICP (MidFirst's customer). Generally, banks do not have a duty to disclose a customer's financial condition to a third party. *Kesselman v. Nat'l Bank of Ariz.*, 937 P.2d 341, 343 (Ariz. Ct. App. 1996). A bank may, however, have a duty to disclose if there is a "special relationship" between the bank and the third party. A "special relationship" can exist under a variety of circumstances. For example, a "special relationship" exists if the bank was "directly involved with the third part[y] in the transactions that [are] the subject of litigation." *Id.* at 345. A special relationship also exists when the third party "place[s] trust or confidence in the bank" based on the bank's conduct. *Id.*

According to the second amended complaint, Summit originally was paid according to the following process. First, ICP would submit a pay request to MidFirst. Second, MidFirst's inspector would then "walk the site with Summit's superintendent and/or project manager to verify the completed work." (Doc. 49 at 4). Finally, assuming the inspector approved the work, MidFirst would provide ICP with the funds to disburse to Summit. In August 2008, Summit expressed to ICP and MidFirst its displeasure with the amount of time it was taking to receive payment. Thus, "MidFirst, [ICP], and Summit engaged in *direct[]* negotiations and discussions to establish payment procedures that would ensure timely payment [from] MidFirst to Summit." (Doc. 49) (emphasis added). Ultimately, MidFirst removed ICP from the payment process and substituted First Arizona Title to act as an escrow agent to process the payments from MidFirst to Summit. MidFirst also imposed new requirements on Summit regarding documentation.

After additional delays in receiving payment, Summit "started making inquiries of MidFirst and First Arizona Title." On December 2, 2008, MidFirst sent an email to First Arizona Title confirming that MidFirst would fully fund the balance of the loan." This email

was forwarded to Summit.[1] Summit continued working on the project based on MidFirst's statements in the email. Finally, in January 2009, MidFirst's inspector approved Summits's work. The inspector stated he "would instruct MidFirst to release the payment."

MidFirst argues that these facts are not sufficient to establish that MidFirst had a duty to disclose to Summit that ICP had defaulted on the construction loan. MidFirst examines the facts in isolation. For example, MidFirst correctly points out that MidFirst's involvement in payments to Summit is not enough, standing alone, to establish a special relationship. *See, e.g.*, *Giles Const., Inc. v. Commercial Fed. Bank*, 2006 WL 2711501 (D. Ariz. 2006) (merely issuing checks did not establish special relationship). The allegations of the relationship between MidFirst and Summit cannot, however, be viewed in a vacuum. The facts recited in the complaint must be viewed as a whole. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (stating court must assume the veracity of the factual allegations "and then determine whether they plausibly give rise to an entitlement to relief"). Taken together, the complaint alleges MidFirst was in direct contact with Summit on multiple occasions, MidFirst's inspector assured Summit payment would be forthcoming, and MidFirst affirmed in writing that the entire loan balance would be funded. In combination, these are sufficient allegations to establish a "special relationship."

Accordingly,

**IT IS ORDERED** the Motion to Strike and Motion to Dismiss (Doc. 60) is **DENIED**.

DATED this 29th day of April, 2010.

_____
Roslyn O. Silver
United States District Judge

---

[1] It is unclear who forwarded this email to Summit.

- 4 -